Good morning, your honors. May it please the court. My name is Gregory Zunino. I'm a Deputy Solicitor General with the Nevada Attorney General's Office. And I'm appearing on behalf of defendants, Dzurenda, Williams, and Cox. And it's my understanding that all three of those gentlemen were formerly employed by the Nevada Department of Corrections. I don't believe they're still employed, but I could be wrong because I don't have a great deal of familiarity with the prison system. This is a new assignment for me, but at any rate, I don't think that changes the issues for us here today. And I think this is a bit of an unwieldy case, at least in my opinion, it is. And I would admit that the state bears a fair share of the responsibility for that. I mean, there are now a number of kind of procedural and jurisdictional issues that the plaintiff has raised, that the appellate has raised. And they relate to the motion practice and the fact that certain arguments weren't raised in the opening brief on summary judgment. They were raised in the reply brief, and then there's another question. We're aware of all the procedural issues. It might help us if you just focus on those issues that you think, where you think the district court erred. That's all. So I think the district court initially issued on the procedural question, right, on the waiver question, there was an order, and then there was a subsequent order on a motion for reconsideration. And I believe that the district court kind of supplanted the original ruling that there was a waiver with a ruling on the merits, where she says, in any event, defendants are not entitled to qualified immunity. So she addresses that issue on the merits as it relates to the claim for damages in connection with the dental treatments, right? So I think she reached out on the merits. It says there's a waiver. I mean, the same document, it doesn't say I've changed my mind about whether there was a waiver. It says there was a waiver, right? No, no, it does, Your Honor, with all due respect. It says it is not clear for a district court to decline to consider arguments raised for the first time. In any event, defendants are not entitled to qualified immunity. So I interpret that as her saying, I'm gonna reach this on the merits. I don't think it was her intention to foreclose an appeal on this issue, on this qualified immunity issue, because I think it's an important question of law. So I don't interpret her as trying to kind of foreclose appeal on that issue. The other question concerns, you know, the notion of standing versus injury. There's kind of this argument. You know, we used the word standing when we argued some of these issues. I think ultimately, though, we raised below the argument that there are not compensable injuries in the sense that there are not monetary damages available to the plaintiff with respect to the conditions of confinement claims, other than the bunk bed issue. There's an allegation that Mr. Johnson suffered knee pains as a result of having to climb up and down from the top bunk. And I think that raises a claim of physical injury, right? That is, you know, arguably compensable under the Eighth Amendment. But, you know, these other issues, and they're interesting issues, right? I mean, he's talking about kind of the electrical systems and the mechanical systems and the design of the prison and the cells are small and the corridors are small, but he doesn't, Mr. Johnson doesn't connect that to a physical injury or to severe pain, anywhere in the pleadings or in the complaint. And so there is no way really to ascertain that there is a physical injury or severe pain that would be cognizable under the Eighth Amendment. Now, I agree with the judge that those claims, you know, insofar as they're requesting summary or requesting declaratory or injunctive relief. I mean, like I said, I think they're interesting claims. And so I- Which claims are you conceding should go to trial now? Now, the claims that would go to trial would be strictly the claims on the conditions of confinement as they relate to declaratory or injunctive relief. In other words, I think it, you know, those claims should go to trial, but they shouldn't go to trial against these individual defendants because they're no longer in a position where they could grant or implement any type of declaratory injunctive relief. I mean, those claims would have to go against the Nevada Department of Corrections or the current director. I mean, it wouldn't be appropriate for the court to enter a judgment against Director Zerenda, for example, because he's no longer employed by the Department of Correction. So he could not implement any kind of- Well, if the case were to go to trial on those issues against the individuals in their official capacity on remand, the district court could always just substitute in the current official, correct? I agree with that. I agree with that. But I don't think that the claims for injunctive relief should or can proceed against Director Zerenda or the former director- That's something the district court can resolve on remand, correct? I agree with that. I agree with that. So I don't understand your position on the, what was it, the bunk bed, the top bunk? So there's a claim that- If we were to disagree with you and agree with the district court's ruling, is that the only, is the standing argument the only basis that you're raising on appeal? No, the basis for the appeal is qualified immunity on the dental care and the bunk bed issue, right? And the problem with the claims are that, the plaintiff didn't adequately allege personal participation in the complaint. There was no evidence- He did. I mean, he did say, at least as the dental claims, specifically that he complained about the dental issues to these defendants. At least to Williams, there are documents showing they were directed to Williams, right? There are, and I think the bare allegation that he told like a high level prison official about something doesn't necessarily establish the causal connection that's necessary to tie that person to an injury. For example, you know, typically the allegation would be leveled against a lower level employee. And then, you know, through discovery, you develop like a chain of causation. You could trace that like to the top, but here, Mr. Johnson went right to the top of the chain of command and said, these are the guys who are responsible. This is the reason I didn't get dental care. And so what case would you rely on to show that that means the claim definitely fails? I mean, maybe you'll prevail in showing that these guys were too high up, but weren't really involved. But if it's alleged that they were, that seems like a factual question. And I don't know of any case that says a warden can't possibly be involved in a decision about someone's dental care. Yeah, I think that's true, but I don't think there are any facts in the record that show that. I mean, there's just a bare allegation that Mr. Johnson told the warden or told the director about these issues. And that's implausible. I mean, we noted that, and I think that may be fatal ultimately to Mr. Johnson's claims at trial, if they go to trial, because it's gonna be a fairly easy thing to demonstrate that these conversations couldn't possibly have occurred. So- He has a verified complaint. So right now, that's a fact dispute. It's a fact dispute as to whether he told a high-level official that he had a toothache. But I don't think that's a material factual dispute. I don't think it's enough to get over the deliberate indifference bar, the deliberate indifference standard. And part of that analysis includes personal participation. And I think if you don't require some evidence of kind of personal involvement or personal participation beyond just this allegation that, hey, I informed him, then effectively what you're doing is requiring someone to serve in a representative capacity, but essentially appear, it blurs the lines between kind of official capacity and individual capacity, and ultimately kind of erodes the state's 11th Amendment immunity. And I would submit that that's one reason why this personal participation requirement exists in the case law. I mean, it's policy-based. And so it's not enough to just allege that some high-level official knew about something. For example, if Mr. Johnson alleged that the governor, I told the governor about this. Do we force the governor to come into court and defend himself at trial? And I would submit that that's not what the 8th Amendment contemplates, and that arguably violates 11th Amendment immunity. And I would note that a prison director is just one step down from the governor. I mean, he's part of the governor's cabinet. So Mr. Johnson has made a decision to go right to the top with his complaint. Can I ask you a question just on this personal participation point that you keep stressing? That issue was decided at summary judgment, and you, meaning the state and the defendants, had an opportunity to put on evidence to show just how implausible the plaintiff's claims were. And as I understand it, you put on nothing. All we have is his verified complaint saying that he did notify these individuals. And for whatever reason, your side chose to put on no evidence whatsoever. And so I think that's why the district court ruled against you. So is there something that I've missed in the record that you want us to look at? No, I would admit that there's no evidence in the record. But I would argue that the pleading itself doesn't meet the Iqbal standard in terms of alleging... You're not up here on the Iqbal standard, on a motion to dismiss. You're up here on a claim that the district court denied qualified immunity. That's the only reason why you're allowed to appeal. Well, I mean, the question of whether someone has pled a complaint and the first prong of the qualified immunity standard are one and the same. I mean, you have to show an injury or the state actors are tied up to qualified immunity. We assume for purposes of qualified immunity that the well-alleged established facts by the non-moving party are true. And that's what Judge Watford is alluding to. Well, and the only thing that you can... And you ask whether or not those facts, those facts, whether reasonable trier fact could find a constitutional violation at the first step of qualified immunity. But the problem with that is the only fact in the record is that Mr. Johnson told the director of the prison system about his toothache or about his knee pain. And that doesn't get over the hurdle of actually stating a claim under the Eighth Amendment. So it necessarily kind of affords the basis to grant qualified immunity to the director and the other wardens. Okay. Could I ask one question about your earlier statement that the case should go forward on injunctive relief. For the dental claim and the top bunk, aren't those done? Like he already had the dental surgery at this point and I hope he's not still in a top bunk. Can you explain whether those issues are still ongoing? I think he may be in a top bunk because I received a call from my opposing counsel last night and he left a voicemail and he told me that Mr. Johnson's still in a top bunk. And I have no knowledge beyond that as to whether the issue has been resolved or not. What about the dental surgery? The dental surgery? I think he got the dental surgery. So that can't really be an injunctive relief claim at this point? Oh, no, it's just the conditions of confinement. Strictly the claims that relate to the mechanical and electrical systems and the design of the prison, right? The bunk bed is different, because that's an assignment, right? Somebody assigns him to the top bunk or the lower bunk. So that's an action that can be attributed to a lower level prison official. But the conditions of confinement is kind of an abstract claim that relates to the condition of an aging prison and whether those conditions can be abated, right? Through renovation or construction or whatever. I mean, it goes way beyond any kind of claim for damages. It's a rather complex claim for injunctive relief. Do you want to save some time for rebuttal? I would. Okay, you got 33 seconds. Okay, we'll hear from Mr. Johnson's counsel. Thank you. May it please the court, William Perdue on behalf of Appellee LaStevion Johnson. The district court carefully evaluated Mr. Johnson's pro se claims, rejecting many of them, but correctly allowing four claims to survive summary judgment. For two of those four claims, those relating to Mr. Johnson's dental treatment and to the fire safety system, this court does not need to reach the substance at all because the defendant simply did not properly raise qualified immunity below. But I'd like to focus today on the other two claims. Those are the claims relating to the pain caused by Mr. Johnson's bed assignment and the overcrowding related violence. So starting with the pain from the bed assignment, Mr. Johnson told the defendants for years that he has atrophy and arthritis in his left knee and his back. And those conditions make it extremely painful for him to jump up to and down from his assigned upper bunk bed, which is five and a half feet off of a bare concrete floor with no ladder. Yet for years, the defendants simply ignored Mr. Johnson and did nothing, allowing him to suffer substantial pain from this everyday activity that he undertakes multiple times every single day. Under established precedent, that violates the Eighth Amendment. In the Supreme Court's decision in Estelle v. Gamble, it's established that deliberate indifference to serious medical needs violates the Eighth Amendment. And this court has applied that principle to the context of substantial chronic pain in multiple decisions. Those would include this court's decisions in Hunt, McGuckin, and Jett. And then more recently, just earlier- Is the need for a lower bunk bed a serious medical issue? Yes, because it stems, this is really a claim about pain, not so much a claim about a bed. The bed is what Mr. Johnson believes to be the reasonable, appropriate way to deal with his pain. But his fundamental complaint is that he is in pain. And I would point this court to this court's decision earlier this year in Jackson v. Sultani and Zada. I will acknowledge that is an unpublished decision of this court, but it applies this court's precedents that I just mentioned specifically to the context of a medical condition that requires a prisoner to be kept on a lower bunk bed rather than an upper bunk bed. Could I ask you- So that case illustrates, I'm sorry. I think the defendants have raised some question about whether Mr. Johnson has a diagnosis that would cause him to need a lower bunk. And I thought at ER 260 in the verified complaint, he said that he had been diagnosed with atrophy and arthritis. So it's looked to me like he does have a diagnosis, but I didn't see a mention to that diagnosis in your brief. And I just wondered whether there's some question about whether he really has a diagnosis that's the reason it's not in your brief or what's going on about that. Thank you for providing the opportunity to clarify. So you are right. He does have a diagnosis for those conditions in his knee and his back. So to be crystal clear about what the record shows, there's not anything in the record that shows that he has a medical designation that requires him to be housed on a lower bunk, but there is evidence in the record that he has a medical diagnosis for these conditions in his knee and his back. And isn't part of what he's asking for then, this designation? I mean, he's trying to use the diagnosis to get the designation for a lower bunk, right? That's probably what he's trying to do. Yes, and I think what your honor is gesturing towards is whether these are the proper defendants or whether there's an administrative process for this, and which is something that my friend on the other side alluded to in his argument. And I wanna be clear about this. There's been no argument by the defendants below that they're powerless to fix this problem. There's no evidence that there's any administrative channel for dealing with this problem. There's no evidence that they have delegated responsibility for dealing with this kind of problem to some other official. There was no exhaustion defense raised below. Exhaustion is an affirmative defense under the PLRA. So I think this case is pretty much on all fours with this court's decision in Jett. Jett is a decision that involves an inmate with a broken hand. He wrote a letter to the warden saying, my hand is broken, I need treatment. And this court said, taking all reasonable inferences in favor of the plaintiff on summary judgment, we have to assume that the warden received that letter and the warden did nothing. And for that reason, the court let that claim proceed. I think this case is on all fours with that. I do wanna bring up the court, my friend on the other side mentioned that this problem is in fact ongoing and this court will indulge me going outside the record for just a moment. I feel obligated to bring this to the court's attention. So I spoke to my client on the phone yesterday. He is currently at a different facility, not SDCC, where until recently he was on a lower bunk. However, last week he was reassigned to an upper bunk. He told the officials, I can't be on an upper bunk. I can't physically get up there. He attempted to climb up. He physically unable to do that. And the prison guards, prison officials ignored him and wrote him up for refusing his bed assignment. And they placed him in solitary confinement as a disciplinary measure. So in other words, right now, as we are speaking, Mr. Johnson is in solitary confinement as a result of deliberate and continued deliberate indifference by prison officials to the pain caused by him being assigned to an upper bunk bed. This is an urgent problem where a clear ruling from this court would be of great assistance to Mr. Johnson. Does the fact that he's moved facilities moot the hallway claim? It does not. So I'm happy to move to that claim. I assume you're referring to the claim regarding- The crowding. Overcrowding related violence, exactly. Yes, Your Honor. So this appeal is an interlocutory appeal regarding qualified immunity, which is a defense to damages liability rather than to injunctive relief. And I'd like to start with the facts regarding that claim, which are undisputed. So Mr. Johnson is double-celled. He's in a, there are two men in a cell that's designed for one man. They're housed not in a proper day room, but in the hallway between the cells, which is 15 yards long, seven feet wide. There's 74 men who are held in this area for 10 plus hours every day. It is dirty. It's a bare concrete floor with no chairs. It's foul smelling. It's poorly ventilated. There are no, there's no visual supervision of this area by the guards because there's only one guard assigned to three of these wings. There's no emergency call buttons  if there's a medical emergency. So sorry, can I interrupt for a second? Is this true in his new facility as well as in the old facility? You're describing what I thought was the facility at the time that he filed the complaint. I am describing the conditions in the SDCC. I am not describing, there are no allegations about the facility where he's held now. This is a damages claim for the conditions he was held in at SDCC. He also has, that's all that's before this court right now. He also has injunctive claims and there may be an issue on remand about whether those have been mooted because he's been moved to another facility. I don't think that's clear from the record right now. There's certainly, I mean, he's been moved out of SDCC and back into it even while this court, this case has been pending. So there's certainly some chance that could happen again but this court doesn't need to concern itself with that at this point. The injunctive relief just isn't before you and it's something that the district court as well. I actually did think this was an injunctive relief only claim and I guess I just misread the record on that. The reason I thought that is because I didn't think there was any allegation on your client's part that he actually suffered some kind of physical injury. Like he wasn't the victim himself of any violence or something like that, right? He was just concerned about the potential given these conditions for future harm that he might suffer. Am I wrong on that? So the only things that are before this court on this interlocutory appeal is qualified immunity, which is only a defense to damages liability. So an injunctive claim just isn't in front of the court right now, but to answer your claim directly, I have kind of a legal answer to it and a factual answer to it. The legal answer to your question is that whether he actually experienced the physical injury is a question that really goes to damages and does not go to qualified immunity. The question for this court on this interlocutory appeal is do the facts as taken by the district court state a violation of clearly established law? You think Mr. Johnson, the facts he's presented, which again, he presented pro se and are unrebutted by the other side, do that much? The factual answer to your question is that you are correct that there's not a clear statement or allegation in the record that he was the victim of a violent assault. I am, however, in a position to make a representation to the court that he has told me that he is, he was in fact, the victim of a violent assault. And if this case goes back down and continues to be litigated, he intends to present evidence to that effect when this claim goes to trial. Okay. If there are no further questions about the overcrowding claim, I'll move briefly to the other two claims. I'll start with the pain from the failure to provide dental treatment. So there's no need for the court to address the substance of this claim because there are actually multiple threshold obstacles to review. The first is that there's simply no appellate jurisdiction. The district court rejected qualified immunity on this defense, on this claim, on two separate and independent grounds. First, the court held that the defendants did not raise qualified immunity until their reply brief. And in any event, separately, qualified immunity fails on the merits. Either one of those two rulings is sufficient to support the ruling below. And the procedural ruling about waiver does not fall within the collateral order doctrine. It's a purely case-specific procedural ruling. It doesn't conclusively resolve anything. It's not systemically important. It's not, doesn't involve a question of law. So it does not fall within the collateral order doctrine. Well, in any event, even if this court- Yeah, I doubt that what you just said is correct. I mean, if the district court improperly deprived the defendants of the ability to even raise qualified immunity, it's not acceptable just to say, well, you'll just have to raise it at the end of trial. I mean, the whole point of the doctrine is to prevent a trial. So I think they're right to challenge the district court's forfeiture or waiver ruling, however you want to frame it. I think your point is simply that they just really haven't made any persuasive argument to overcome their forfeiture. And so that's probably the basis on which we could affirm. I'm happy for this court to reject the defendant's arguments on either of the threshold grounds I've raised. I have no objection to this court doing it on the waiver grounds. I'll just explain why I believe this is not within the collateral order doctrine. The relevant jurisdictional principles are well-explained in Judge Friedland's recent opinion in the state of Anderson v. Marsh. And that explains that even within the qualified immunity arena, it's only certain kinds of rulings that are subject to interlocutory appeal. That's rulings about what is the clearly established law, not rulings about what reasonable inferences a jury could draw from the evidence that was presented on some of them. I think this procedural ruling is much more like that kind of fact-based dispute. And that's for a couple reasons. It doesn't conclusively resolve anything. The defendants can raise qualified immunity again, mid-trial or post-trial. It doesn't concern a question of law. I mean, in fact, it's actually reviewed for abuse of discretion, which I think alone shows you that it's not the kind of issue that's appropriate for the collateral order doctrine. And it's not systemically important. It's a very case-specific argument or ruling about whether they can raise this defense in this particular piece of motion practice or a different piece. But again, I'm happy for this court to rule in our favor on that. I was just gonna add, there was nothing that the district judge did that precluded them from raising qualified immunity in the initial moving papers, is there? Absolutely not. It was perfectly, there was nothing preventing them from doing that. And they did raise qualified immunity on some of the other claims that Mr. Johnson has raised. And that's why those claims, for example, the bed assignment claim and the overcrowding-related claim, those are properly, the court's rulings on qualified immunity for those claims are properly before this court on this interlocutory bill. I suppose if this- For whatever reason. I was just gonna say, I suppose if this case goes back down, that when it's back before the district court, they could always try to seek leave of the district court to file another pretrial motion on qualified immunity. Isn't that correct? Absolutely, they could seek, absolutely, I don't see why they, I mean, I think that would be within the district court's discretion, whether to allow it or not. But then, of course, they could also raise qualified immunity on a Rule 50 motion mid-trial or in a post-trial motion. There are multiple other opportunities for this. In the brief time I have left, I wanna briefly address the fire safety system claim as well. The district court's ruling on this claim concerns standing, not qualified immunity. This court's en banc decision in Cassereer is very clear that standing does not fall within the collateral order doctrine. And, your honors, I apologize. Your honors, and the Cassereer is very clear that standing does not fall within the collateral order doctrine. I'd also note that it appears that the defendants have actually conceded standing. I see my time has expired, if you'll allow me to finish my point. Your point. If I understood my friend on the other side correctly during this argument, he appeared to concede the issue of standing, which was the only issue that was raised on this claim below. So, I don't see how there could possibly be a reversal on this claim. The question of standing for injunctive relief or standing for damages is very much the same, and I don't see how there would be any daylight between them. The court has no further questions. We would ask that the court dismiss this appeal in part and affirm in part. Thank you very much. You had 39 seconds for, or 33 seconds for rebuttal, but I'll ask the clerk to put on a minute, minute for you to make whatever point you wanna make. Thank you, your honor. And my opposing counsel mentioned one thing that their intention is to proceed with a claim for monetary damages on these conditions of confinement issues. I just reiterate that there is no claim of injury. There's no claim of pain that can be connected to these arguments. For that reason, there's no constitutional violation. For that reason, these defendants are entitled to qualified immunity. I mean, I mean, they necessarily have immunity if there's no, if a constitutional injury has not been alleged with respect to the claims for damages. With regard to the waiver issue, again, I'll go back to that. You know, Pearson v. Callahan, 2009, 9th Circuit stands to the proposition that there's a strong public policy in favor of resolving these qualified immunity questions in advance of trial. I'll go back again to my initial statement that I don't believe that the district court judge intended to foreclose appeal on that. She has effectively supplanted her initial ruling with a ruling that goes to the merits. And, you know, and qualified immunity ultimately is a question of law. That's why it needs to be resolved prior to trial. So I think it's well within your discretion to reach that waiver question and actually get to the merits of the qualified immunity claim. And I think that would be of great assistance in terms of trying to sort these issues out for trial. Thank you, Mr. Zanino.  We appreciate your arguments this morning. And the matter is submitted.
judges: PAEZ, WATFORD, FRIEDLAND